Filed 6/29/16  In re M.R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re M.R. et al., Persons Coming Under the Juvenile Court Law. | B266603 (Los Angeles County Super. Ct. No. DK09802) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DAVID R.,<br><br>        Defendant and Appellant. | |

        APPEAL from findings and order of the Superior Court of Los Angeles County. Julie Fox Blackshaw, Judge.  Affirmed in part and remanded with directions.

        Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

        Office of the County Counsel, Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

_____

This is an appeal from a jurisdictional order in a dependency case pertaining to M.R. (sister) and M.R. (brother) (collectively minors). David R. (father) father does not challenge the juvenile court's jurisdiction. Rather, he asks us to reverse the jurisdictional finding that he physically harmed the minors when he spanked them with a belt, and they were at risk of physical harm in the future.

The question presented is whether the belt spankings qualified as serious physical harm within the meaning of Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] Because the juvenile court did not analyze the factors set forth by *In re D.M.* (2015) 242 Cal.App.4th 634, 640 (*D.M.*), we reverse and remand the matter for a new hearing on whether father caused the minors serious physical harm by spanking them with a belt, and whether they were at risk of physical harm in the future. In all other respects, we affirm.

## FACTS

Father was born in 1951. He is a registered sex offender based on a crime he committed in 1991.[2] At some point in the 2000's, he was in a relationship with Francine M. (mother), who was born in 1985. During their relationship, they fought and were violent toward each other.

Sister was born in 2006, and brother was born in 2009.

In 2014, mother stabbed father in the hand. After that incident, she left the family home and did not return.

As reported to the Department through a child abuse hotline, mother's new boyfriend—a man named Alex—touched brother's penis. It was further reported that

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    At one point in the proceedings, the Los Angeles County Department of Children and Family Services (Department) submitted a 1991 police report indicating that father was caught having sex in his vehicle with a 13-year-old girl. He was 40 years old at the time. When father was interviewed, he said he went to prison for three years.

mother and father had engaged in domestic violence on multiple occasions, and there was a physical altercation between father and Alex.

A social worker interviewed the family members. Sister said that when she got into trouble, mother and father spanked her on her bare buttocks or over her clothes. Later, sister reported that when she gets into trouble, father gives her a "whooping" with a belt and that it hurts. She denied that the belt left marks. Brother stated that when he gets into trouble, he has to stand in a corner. Father pulls down brother's pants and spanks him on the buttocks with a belt. Brother did not know if the spankings with the belt left any marks. Brother said that father made up the report that Alex had touched brother's penis.

The minors reported that they saw mother and father fight, and that the fights involved yelling and sometimes hitting.

Mother and father denied that he hit the minors with a belt. Mother said father would hit the wall with a belt to scare the minors, and they would hide under the bed. She claimed that she talked to father about using the belt to scare the minors, but he continued to do it. Father denied hitting the wall with a belt, though he admitted that on one occasion he hit a bed with a belt.

The minors were taken into protective custody, and the Department filed a petition pursuant to section 300, subdivisions (a), (b) and (d). It alleged that the minors suffered serious physical harm when father physically abused them with belt spankings; there was a risk of serious physical harm because of the prior belt spankings and the violent altercations between mother and father; there was a substantial risk that the minors would suffer serious physical harm due to the inability of mother and father to protect them from domestic violence, the inability of mother to protect them from father's physical abuse, and the inability of father to protect them from inadequate care from mother due to her substance abuse; and the minors were at risk of sexual abuse from father.

In the addendum report filed concurrently with the section 300 petition, the Department recommended that father participate in a domestic violence program for

3

perpetrators, sexual abuse counseling for perpetrators, an anger management program, individual counseling and parenting classes.

On July 13, 2015, the juvenile court held a jurisdiction hearing. It considered reports and documents submitted by the Department. Father called Dr. Amy Phenix, a clinical psychologist, as an expert regarding sex offenders. She opined that a variety of factors, including that father was 64 years old and had not committed a sex offense for almost three decades, suggested that he posed no greater risk to the minors than "any male in the population[.]"

After the close of evidence, the juvenile court indicated that its tentative ruling was to dismiss the portions of the petition alleging that father posed a risk of sexual abuse to the minors. Father's counsel proceeded to argue, among other things, that the physical abuse counts should be dismissed because the evidence was insufficient to establish that striking the minors with a belt was excessive, or that the minors were subjected to unreasonable pain and suffering.

The juvenile court dismissed the counts based on the alleged risk father posed to the minors because he was a sex offender. It sustained all other allegations. Regarding the physical abuse allegation, the juvenile court stated: "Both parents really minimize and, in fact, say statements that are contradictory to the children. The statements from the children, at least [brother], says that it happens with his bare bottom sometimes. [¶] The parents minimize that, deny that. [Sister], even though she says there are no marks, she said it hurts. [Brother] didn't say there were no marks; he just didn't notice the marks. [¶] So I think given the parents' denials . . . and lack of acknowledgement of the danger to the children makes me even more worried because definitely these children were hit. The parents aren't owning up to it. I can't be confident that it's not going to happen in the future."

The minors were declared dependents of the juvenile court and removed from the physical custody of mother and father. They were placed into the custody of the Department for suitable placement. The Department was instructed to provided mother

4

and father with reunification services. In addition, father was granted monitored visitation.

As to the case plan for father, the juvenile court ordered him to attend a 52-week domestic violence program, a parenting program and individual counseling to address issues such as anger management.

This timely appeal followed.

## DISCUSSION

### I. Justiciability.

Because father challenges the physical harm and risk of physical harm findings but not the other jurisdictional findings, the juvenile court's dependency jurisdiction must be affirmed. (*In re D.P.* (2015) 237 Cal.App.4th 911, 916 (*D.P.*).) Father concedes as much. Given his appellate strategy, we must determine whether this appeal presents a justiciable issue. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489.)

"Courts may exercise their 'discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].' [Citation.]" (*D.P.*, *supra*, 237 Cal.App.4th at p. 917.) These exceptions to the general rule of nonjusticiability of challenges to discrete jurisdictional findings rather than dependency jurisdiction as a whole were delineated by *In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763 (*Drake*).)

Father notes that the findings, if left in place, will affect "all aspects of [his] reunification services case plan, not least his treatment in individual psychotherapy. Domestic violence and physical abuse of a child with a belt are distinct issues, are treated very differently by service providers, and do not share the same measures of rehabilitation." Further, he contends that the "extent to which the Department and the juvenile court perceive father to have addressed his role as a perpetrator of physical abuse will directly affect evaluation of father's progress in services, and thus will have direct

5

consequences pertaining to when—or in fact whether—father is able to reunify with his children."

Father does not challenge any dispositional orders, so he cannot challenge the physical harm and risk of physical harm findings pursuant to the first *Drake* exception to the rule of nonjusticiability. Primarily, he focuses his attention on the second *Drake* exception when he indicates that if he is required to address child abuse issues in the case plan, that may create an extra hurdle to reunification.

There is a possibility that father may be prejudiced by the physical harm and risk of physical harm findings. (*D.M.*, *supra*, 242 Cal.App.4th at p. 640.) Thus, we opt to reach the merits of this appeal.

## II. The Physical Harm and Risk of Physical Harm Findings.

Father challenges the sufficiency of the evidence to establish the jurisdictional findings that he inflicted serious physical harm on the minors or they were at risk of serious physical harm within the meaning of section 300, subdivisions (a) and (b).[3] We review jurisdictional findings under the substantial evidence test. (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1344.) But if the juvenile court applied an incorrect legal standard, "we may decline to engage in substantial evidence review and instead remand to allow the juvenile court to apply the correct legal standard." (*D.M.*, *supra*, 242 Cal.App.4th at p. 643.)

Section 300, subdivisions (a) and (b) are designed, in part, to protect minors from "serious physical harm." In *D.M.*, we explained that under section 300, subdivision (a),

---

[3]     Section 300 provides, inter alia, that a child who fits the following descriptions is within the jurisdiction of the juvenile court: "(a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent. . . . For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury. [¶] (b)(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse." (§ 300, subds. (a) & (b).)

serious physical harm does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury. This exception "applies across the board to all section 300's jurisdictional grounds[.]" (*D.M.*, *supra*, 242 Cal.App.4th at p. 640.) Moreover, we held that "a parent's spanking of her children on the buttocks with her bare hand and with a sandal" does not "categorically constitute[] 'serious physical harm'[.]" (*Ibid.*)

"Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of this parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.' [Citations.]" (*D.M.*, *supra*, 242 Cal.App.4th at p. 641.)

Here, the juvenile court tacitly assumed that all belt spankings cause serious physical harm. This was error. In *D.M.*, we held there is no blanket rule regarding spanking with a sandal, and the same should be true for belt spanking. Some belts are made of leather and some are not; some belts are stiff, and some are not. Consequently, a spanking with one type of belt could be more dangerous than a spanking with a different type of belt. Also, the force used in a belt spanking is a relevant factor when considering whether the amount of punishment was reasonable or excessive. Finally, we note that a sandal could be harder or heavier than a belt, and could be more dangerous. Thus, it would promote form over substance if we were to hold that a belt spanking categorically leads to serious physical harm, but that juvenile courts must engage in a case-by-case analysis with respect to a sandal spanking.

The Department offered no evidence that the belt spankings caused marking or bruising, and the juvenile court did not analyze the *D.M.* factors. Moreover, the record is not developed enough to shed light on whether the father's discipline of the minors was genuine, necessary and reasonable. Consequently, the physical harm and risk of physical harm findings must be reversed.

## DISPOSITION

The physical harm and risk of physical harm findings are reversed and the matter is remanded for a new hearing. In all other respects, the jurisdictional order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
        ASHMANN-GERST

We concur:

_____, J.
        CHAVEZ

_____, J.
        HOFFSTADT

8