Filed 10/10/23  In re S.V. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re S.V. et al.,<br><br>Persons Coming Under the Juvenile Court Law. | B322239 and B326530<br><br>(Los Angeles County Super. Ct. No. 22CCJP01943A-E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>Z.R.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Commissioner.  Affirmed.

Gina Zaragoza, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

Z.R. (mother) appeals the juvenile court's jurisdictional and dispositional orders over her five children:  S.V. (born Feb. 2013), twins M.V. and H.V. (born Dec. 2014), and twins Zu.R. and Zi.R. (born Aug. 2017). Mother also appeals the court's denial of her request to dismiss the dependency petition.[1]  We affirm.

**DISCUSSION[2]**

A. *Mootness*

The Los Angeles County Department of Children and Family Services (DCFS) contends mother's appeal should be dismissed as moot because the juvenile court terminated jurisdiction, with the children continuing to reside with mother.  We disagree.

"A court is tasked with the duty "'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."'" (*In re D.P.* (2023) 14 Cal.5th 266, 276, quoting *Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863.)  "A case becomes moot when events "'render[ ] it impossible for [a] court, if it should decide the case in favor of [appellant], to grant him [or her] any effect[ive] relief.'"  [Citation.]  For relief to be 'effective,' two requirements must be met.  First, the [appellant] must complain of an ongoing harm.  Second, the harm must be redressable or

---

[1]    On our own motion, we consolidated the appeals for purposes of oral argument and decision.

[2]    We discuss only the facts germane to the issues raised on appeal.

2

capable of being rectified by the outcome the [appellant] seeks. [Citation.]" (*In re D.P., supra*, 14 Cal.5th at p. 276.)

Mother argues that her appeal is not moot because there is a "specific legal or practical consequence that will be averted upon reversal" of the jurisdictional findings. (*In re D.P., supra,* 14 Cal.5th at p. 283.) Specifically, she contends the jurisdictional findings resulted in her inclusion in California's Child Abuse Central Index (CACI) (Pen. Code, § 11170), which carries several legal consequences. We are inclined to agree.

"California's Child Abuse and Neglect Reporting Act (CANRA; Pen. Code, § 11164 et seq.) requires that several state agencies, including [DCFS], forward substantiated reports of child abuse or neglect to California's Department of Justice (DOJ) for inclusion in the CACI. (Pen. Code, § 11169, subd. (a).) CANRA sorts reports of child abuse and neglect into three categories: unfounded, inconclusive, and substantiated. (Pen. Code, § 11165.12.)" (*In re D.P., supra,* 14 Cal.5th at p. 278.) As relevant here, "[a] report is substantiated if it 'is determined by the investigator who conducted the investigation to constitute child abuse or neglect.' [Citation.]" (*Ibid.*)

"When an agency forwards a substantiated report, the agency must provide written notice to the person whose conduct was reported to the CACI. (Pen. Code, § 11169, subd. (c).) Persons listed in the CACI are generally entitled to challenge the basis for their inclusion at a hearing before the reporting agency. (Pen. Code, § 11169, subd. (d).)" (*In re D.P., supra,* 14 Cal.5th at p. 279.) This is an important protection because "if 'a court of competent jurisdiction has determined that suspected child abuse or neglect has occurred,' the hearing request 'shall be denied.' (Pen. Code, § 11169, subd. (e).)" (*Ibid.*) Mother's request for a CACI grievance hearing is currently pending.

3

In addition, inclusion in the CACI carries several consequences for mother. "A CACI check is required for 'any prospective foster parent, or adoptive parent, or any person 18 years of age or older residing in their household.' (Health & Saf. Code, § 1522.1, subd. (b).) California law also requires state agencies to search the CACI before granting a number of rights and benefits, including licensing to care for children in a daycare center (Health & Saf. Code, § 1596.877, subd. (b)) and employment in child care (*id.*, § 1522.1, subd. (a)). Even if an agency or employer is not legally required to check the CACI, it may do so as a matter of internal policy. CACI information is available to a variety of entities, including law enforcement entities investigating a case of known or suspected child abuse (Pen. Code, § 11170, subd. (b)(3)), a court appointed special advocate program conducting a background investigation for employment or volunteer candidates (*id.*, subd. (b)(5)), an investigative agency, probation officer, or court investigator responsible for placing children or assessing the possible placement of children (*id.*, subd. (b)(7)), a government agency conducting a background investigation of an applicant seeking employment as a peace officer (*id.*, subd. (b)(9)), a county child welfare agency or delegated county adoption agency conducting a background investigation of an applicant seeking employment or volunteer status who will have direct contact with children at risk of abuse or neglect (*id.*, subd. (b)(10)), and out-of-state agencies making foster care or adoptive decisions (*id.*, subd. (e)(1)). These agencies and employers are not barred from hiring or granting a license to an applicant listed in the CACI, but they may be hesitant to do so. A CACI search may also occur if there are allegations of child abuse or neglect . . . . Moreover, because the information included in the CACI is available to a wide variety of state agencies,

4

employers, and law enforcement, it may be stigmatizing to the person listed." (*In re D.P., supra,* 14 Cal.5th at p. 279.)

Here, mother has shown that the jurisdictional findings against her were reported for inclusion in the CACI. Thus, we conclude her CACI claim is not "too speculative to survive a mootness challenge" (*In re D.P., supra,* 14 Cal.5th at p. 280) and reach the merits of her appeal.

B. *Jurisdictional Order*

   1. *Applicable Law*

The purpose of the dependency law "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (Welf. & Inst. Code, § 300.2, subd. (a)[3]; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)

Section 300, subdivision (b)(1), provides in pertinent part that a child may be declared dependent if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm" as a result of "[t]he failure or inability of the child's parent . . . to adequately supervise or protect the child." A jurisdiction finding under section 300, subdivision (b)(1), requires DCFS to prove three elements: (1) the parent's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)

---

[3]     All unspecified statutory references are to the Welfare and Institutions Code.

5

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215–1216; *In re N.M., supra,* at p. 165.) A parent's "'past conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In re J.N.* (2021) 62 Cal.App.5th 767, 775 ["[e]vidence of past conduct may be probative of current conditions, and may assist DCFS in meeting [its burden of proof]"].)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J., supra,* 56 Cal.4th at p. 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact

could find that the order is appropriate.  (*Ibid*.; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

### 2.  *Substantial Evidence*

Mother argues there was insufficient evidence to support the court's jurisdictional findings that her inappropriate physical discipline places the children at risk of serious physical harm.  We disagree.

DCFS presented evidence that mother engaged in a pattern of using inappropriate physical discipline against the children.  All five children initially reported mother struck them with belts and a "chancla."[4]  The court found mother's denial of any physical discipline not credible and that she coached the children to subsequently recant their statements.  (See *In re E.B.* (2010) 184 Cal.App.4th 568, 578 [the trial court assesses witness credibility and weighs conflicting evidence], disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989.)  Mother's denial of any physical discipline in the face of credible evidence to the contrary and her coaching the children to lie about such discipline supported an inference that mother knew her physical discipline of the children was unreasonable and excessive.

Importantly, mother has a significant dependency history, including two cases in which the court found mother physically abused the children's half-siblings.  The half-siblings were eventually removed from mother's custody and permanently placed in the care of relatives.  In addition, mother's most recent dependency case resulted in a conviction of child cruelty after she failed to take S.V. to the hospital for third degree burns on her leg

---

[4]    The Spanish word "chancla" is referred to in the record as a slipper, sandal, or shoe, and in other places not translated at all.

and foot. Thus, a juvenile court could reasonably determine that mother's inappropriate physical discipline could escalate into the severe physical abuse previously experienced by S.V. and the children's half-siblings.

Mother claims the evidence is insufficient to support a finding that the children faced a risk of serious physical harm because the children never suffered any visible injuries as a result of mother's conduct. This argument lacks merit. As noted, a court need not wait until a child is seriously injured by his parent's conduct before the court may exercise jurisdiction over the child. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) DCFS need only prove that the parent's conduct places the child at risk of suffering serious physical harm at the time jurisdiction is established. (*Ibid*.) DCFS has met its burden in this case.

Mother asserts that the physical discipline does not rise to the level of "serious physical harm," and cites to *In re D.M.* (2015) 242 Cal.App.4th 634 (*D.M.*). In *D.M.*, a mother used her hand and sandal to spank her children on the rare occasion when lesser disciplinary measures proved ineffective. (*D.M., supra*, at p. 637.) The spanking was never hard enough to leave a mark or bruise, and the mother later expressed remorse. (*Id*. at pp. 637, 644.) The court found dependency jurisdiction was appropriate in light of the judge's categorical view that spanking children with a shoe constitutes physical abuse and that it was a prohibited form of discipline. (*Id*. at p. 637.) The Court of Appeal reversed, instructing the juvenile court to examine whether the mother's conduct fell within her right to reasonably discipline her children. (*Id*. at p. 643.) Specifically, the juvenile court was instructed to consider mother's disciplinary motive, the necessity of her punishment, and the reasonableness of its severity. (*Ibid*.) Mother's reliance on *D.M.* is misplaced. Mother did not raise a defense of exercising discipline below;

instead, she denied the existence of the alleged abuse. In any event, mother cannot simultaneously argue the alleged abuse never occurred and that it fell within the scope of reasonable discipline.

Given mother's extensive history of physical abuse and her categorical denial of physical discipline that was reported by her children, the court could reasonably find that the children were currently at substantial risk of serious physical harm. Thus, mother did not meet her burden of showing the evidence is insufficient to support the court's jurisdictional findings under section 300, subdivision (b)(1).[5]

C. *Dispositional Order*

Mother contends the juvenile court abused its discretion in declaring the children dependents, rather than proceeding with informal supervision under section 360, subdivision (b). (§ 360, subd. (b) ["If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or

---

[5]     Because we affirm the jurisdiction findings under section 300, subdivision (b)(1), based on mother's inappropriate physical discipline of the children, we do not reach whether substantial evidence supports the jurisdiction findings under section 300, subdivision (j). "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J., supra*, 56 Cal.4th at p. 773; accord, *In re M.R.* (2017) 7 Cal.App.5th 886, 896; *In re Briana V.* (2015) 236 Cal.App.4th 297, 309–310.)

guardian under the supervision of the social worker for a time period consistent with Section 301"].) "Whether to exercise this option under section 360, subdivision (b), is a discretionary call for the juvenile court to make; it may opt to do so, but it need not." (*In re N.M., supra,* 197 Cal.App.4th at p. 171.) "A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (*Ibid*.)

Mother never asked the court to proceed under this section.[6] Rather, she asked for the dependency petition to be dismissed. It was counsel for the children that requested a section 360, subdivision (b) disposition. "[I]f the law does not require the juvenile court to act in a certain way, the parent bears the responsibility to care for his or her own interests by asking the court to exercise its discretion in a manner favorable to the parent. In such circumstances, the courts have not permitted the silent parent to argue that the juvenile court erred in not being psychic." (*In re Lorenzo C*. (1997) 54 Cal.App.4th 1330, 1339.) Mother has therefore forfeited this argument.

Even were we to consider her argument, the court aptly noted that mother continuously denied any physical discipline and coached the children not to disclose her actions. (*In re Gabriel K*. (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"]; *In re Esmeralda*

---

[6] We note that at the detention hearing, mother only asked the court to order DCFS "to assess [a section] 301 contract and [section] 360[, subdivision] (b)." Section 301 authorizes DCFS to engage in informal supervision where the social worker "determines that a child is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction." (§ 301, subd. (a).) The difference in proceeding under section 360, subdivision (b) is that DCFS would not first have to establish that the child is described by section 300 as that already would have been established. (*In re Adam D*. (2010) 183 Cal.App.4th 1250, 1260.)

*B.* (1992) 11 Cal.App.4th 1036, 1044 [recognizing a parent's denial is a relevant factor in determining whether the parent is likely to modify behavior].)  Also, mother had engaged in physical abuse with the children's half-siblings as well as S.V. in the recent past.  Given this history, even had mother requested this course of action, we would find the court was well within the bounds of reason to decline to order informal supervision.

    D. *Request to Dismiss the Dependency Petition*

Mother contends the juvenile court abused its discretion in denying her request to dismiss the dependency petition.  We disagree.

At a review hearing, DCFS recommended continuing family maintenance services while mother requested the court terminate jurisdiction or dismiss the petition.  In support of dismissal, mother's counsel argued that "it's in the interest of justice and welfare of the children and the mother no longer needs treatment.  The children are doing well . . . and she does not need any rehabilitation.  She has been participating in 'family preservation.'"  Counsel for the children opposed dismissing the petition but was in support of terminating jurisdiction.  The court noted it was not inclined to dismiss the petition, found continued supervision of the children was no longer necessary and terminated jurisdiction.  The court reasoned that "[t]here's been no safety concerns presented to the court," and mother has "been engaging in 'family preservation' successfully."

The juvenile court may dismiss a dependency petition, "at any time before the minor reaches the age of 21 years, . . . if the court finds that the interests of justice and the welfare of the minor require the dismissal, and that the parent . . . is not in need of treatment or rehabilitation." (§ 390; *In re Natasha H.* (1996) 46 Cal.App.4th 1151, 1156–1157.)  Dismissal is

11

appropriate only if the court makes both findings and "'[s]uch dismissals are rare and usually occur only when the goal of protecting the child has been achieved without court intervention.'" (*In re Carl H.* (2017) 7 Cal.App.5th 1019, 1038.) We review an order denying a request to dismiss a dependency petition for abuse of discretion. (*In re K.S.* (2016) 244 Cal.App.4th 327, 339–340; *In re Destiny D.* (2017) 15 Cal.App.5th 197, 207.)

At the hearing, mother presented no evidence or argument to support the findings that "the interests of justice and the welfare of the minor[s] require the dismissal." Thus, the court was well within its discretion to deny mother's request. For the first time on appeal, mother argues that her inclusion in the CACI as a result of the sustained petition requires dismissal. "'It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal.' [Citation.]" (*Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1249.)

In any event, mother cites no authority that potential legal consequences from a sustained petition warrant its dismissal. Here, the court's intervention was necessary to ensure the children's safety, and the goal of protecting the children would not have been achieved without such action. (See *In re Carl H., supra,* 7 Cal.App.5th at pp. 1038–1039.) As noted, the evidence shows mother engaged in inappropriate physical discipline, had an extensive history of physically abusing the children's half-siblings, and her prior abuse of S.V. led to a criminal conviction of child cruelty. Thus, the court did not abuse its discretion in denying mother's request for dismissal.

//

//

//

//

12

**DISPOSITION**

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


COLLINS, Acting P. J.


MORI, J.